UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| Joy Blackwell, | § | Case No. 6:18-cv-00026 |
| | § | |
| Plaintiff, | § | |
| | § | COMPLAINT FOR DAMAGES |
| v. | § | UNDER THE FAIR DEBT |
| | § | COLLECTION PRACTICES ACT, |
| I.Q. Data International, Inc., | § | THE TELEPHONE CONSUMER |
| | § | PROTECTION ACT, THE TEXAS |
| Defendant. | § | DEBT COLLECTION PRACTICES |
| | § | ACT AND OTHER EQUITABLE |
| | § | RELIEF |
| | § | |
| | § | JURY TRIAL DEMANDED |

## PARTIES

1. Plaintiff, Joy Blackwell ("Joy"), is a natural person who resided in Bosqueville, Texas, at all times relevant to this action.

2. Defendant, I.Q. Data International, Inc. ("IQ"), is a Washington corporation that maintained its principal place of business in Everett, Washington, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

**STATEMENT OF FACTS**

5. Before IQ began contacting Joy, it and Joy had no prior business relationship and Joy had never provided express consent to IQ to be contacted on her cellular telephone.

6. IQ regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

7. The principal source of IQ's revenue is debt collection.

8. IQ is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9. As described, *infra*, IQ contacted Joy to collect a debt that was incurred primarily for personal, family, or household purposes.

10. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

11. Joy is a "consumer" as defined by 15 U.S.C. § 1692a(3).

12. Within the past twelve months, and before, IQ has been calling Joy on Joy's cellular phone ending in -0817 in connection with the collection of a debt.

13. During one communication, in early 2017, IQ threatened legal ramifications if Joy didn't pay the debt.

14. During this conversation, Joy communicated Joy's desire that IQ cease calling Joy.

15. Despite this communication, IQ continued to call Joy on Joy's cellular phone in connection with the collection of a debt.

16. IQ called Joy on an almost daily basis, often from different telephone numbers.

17. On more than one occasion, IQ screamed at Joy when Joy attempted to speak.

18. On at least one occasion, IQ told Joy that Joy would never be able to rent again.

19. IQ reported the debt twice on Joy's credit report, which adversely affected Joy's credit.

20. Joy believed IQ's harassing calls were detrimental to Joy's health.

21. In May 2017, Joy put a temporary freeze on her phone number in order to get IQ's calls to stop.

22. IQ's collection efforts, including but not limited to its telephone calls, caused Joy emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

23. IQ's collection efforts also intruded upon Joy's privacy.

24. In addition, each time IQ placed a telephone call to Joy, IQ occupied Joy's telephone number such that Joy was unable to receive other phone calls at that telephone number while IQ was calling her.

25. IQ's telephone calls also forced Joy to lose time by having to tend to IQ's unwanted calls.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

26. Joy re-alleges and incorporates by reference Paragraphs 12 through 25 above as if fully set forth herein.

27. IQ violated 15 U.S.C. § 1692c(a)(1) by calling Joy at a time or place known to be inconvenient for Joy.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

28. Joy re-alleges and incorporates by reference Paragraphs 12 through 25 above as if fully set forth herein.

29. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774

(7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

30. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

31. The likely effect of IQ's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Joy.

32. IQ violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Joy in connection with the collection of the debt.

## COUNT THREE

**Violation of the Fair Debt Collection Practices Act**

33. Joy re-alleges and incorporates by reference Paragraphs 12 through 25 above as if fully set forth herein.

34. IQ violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## COUNT FOUR

**Violation of the Fair Debt Collection Practices Act**

35. Joy re-alleges and incorporates by reference Paragraphs 12 through 25 above as if fully set forth herein.

36. IQ violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT FIVE

### Violation of the Telephone Consumer Protection Act

37. Joy re-alleges and incorporates by reference Paragraphs 12 through 25 above as if fully set forth herein.

38. Senator Fritz Hollings, the original sponsor of the TCPA, stated:

    > Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

    137 Cong. Rec. 30,821 (1991).

39. The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity…(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).

40. "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls.  The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers."  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

41. A telephone dialing system with predictive dialer functionality is an ATDS within the meaning of the TCPA. *In the Matter of Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

42. IQ used a telephone dialing system with predictive dialer functionality to place calls to Joy on her cellular telephone.

43. The TCPA provides, in part:

   (b)   RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—

   (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

   (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

   * * *

   (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

   47 U.S.C. §§ 227(b)(1)(A)(iii).

44. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961,7999-8000, ¶ 72-73 (2015).

45. Joy was the "called party" in each telephone call IQ placed to Joy's cellular telephone.

46. The "called party" may revoke any prior consent to be called on his or her cellular phone in any reasonable manner. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7993, ¶ 55 (2015); *Brown v. Credit Mgmt., LP*, 131 F. Supp. 3d 1332, 1345 (N.D. Ga. 2015) ("The unwillingness [to receive calls] 'may be manifested to the actor by any words or conduct inconsistent with the continued consent.'").

47. IQ violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an ATDS and/or an artificial or prerecorded voice to call Joy on her cellular telephone without Joy's prior express consent or after such consent had been revoked.

48. In addition, The TCPA provides, in part:

    If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

    47 U.S.C. § 227(b)(3).

49. The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

50. In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc*. 2015 WL 1522244, *9 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, *7 (N.D. Ill. Mar. 19, 2013); *Stewart v. Regent Asset Mgmt. Solutions, Inc.*, 2011 WL 1766018, *7 (N.D. Ga. May 4, 2011).

51. Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. *See Bridgeview*, 2013 WL 1154206, at *7; see also *Roylance*, 2015 WL 1522244, at *9 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

52. IQ voluntarily placed telephone calls to Joy's cellular telephone number using an ATDS and/or an artificial or prerecorded voice.

53. IQ's violations of 47 U.S.C. § 227(b)(1)(A) were willfully and knowingly made.

## COUNT SIX

### Violation of the Texas Debt Collection Practices Act

54. Joy re-alleges and incorporates by reference Paragraphs 12 through 25 above as if fully set forth herein.

55. IQ is a "debt collector" as that term is defined in the TDCPA, Tex. Bus. & Com. Code § 392.001(6). *See Davis v. Wells Fargo Bank, N.A.*, 976 F. Supp. 2d 870, 885 (N.D. Tex. 2013) (TDCPA's definition of "debt collector" is not limited to third-party debt collectors and includes "anyone 'who directly or indirectly engages in debt collection'").

56. Joy is a "consumer" as that term is defined in the TDCPA, Tex. Bus. & Com. Code § 392.001(1).

57. The alleged debt for which IQ was attempting to contact Joy was incurred primarily for personal, family, or household purposes and arose from a transaction.

58. Thus, the alleged debt for which IQ was attempting to contact Joy is a "consumer debt" as that term is defined in the TDCPA, Tex. Bus. & Com. Code § 392.001(2).

59. Section 392.302 of the TDCPA provides, in part:

> In debt collection, a debt collector may not oppress, harass, or abuse a person by…(4) causing a telephone to ring repeatedly or continuously, or making

  repeated or continuous telephone calls, with the intent to harass a person at the called number.

 Tex. Bus. & Com. Code § 392.302(4).

60.  IQ willingly and knowingly violated Tex. Fin. Code § 392.302(4) by communicating with Joy with such frequency as can reasonably be expected to harass Joy, or engaging in other conduct which can reasonably be expected to abuse or harass Joy.

## JURY DEMAND

61.  Joy demands a trial by jury.

## PRAYER FOR RELIEF

62.  Joy prays for the following relief:

  a. Judgment against IQ for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

  b. An order enjoining IQ from placing further telephone calls to Joy's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

  c. Judgment against IQ for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call IQ made in violation of the TCPA.

  d. Judgment against IQ for actual damages and reasonable attorney's fees pursuant to Tex. Bus. & Com. Code § 392.403.

  e. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date:  January 31, 2018          By:    /s/ Jeffrey S. Hyslip
                                 Jeffrey S. Hyslip, Esq.
                                 Ohio Bar No. 0079315
                                 HYSLIP & TAYLOR, LLC, LPA
                                 1100 W. Cermak Rd., Suite B410
                                 Chicago, IL  60608
                                 Phone: 312-380-6110
                                 Fax: 312-361-3509
                                 Email: jeffrey@lifetimedebtsolutions.com
                                 Attorney for Plaintiff